On behalf of the athlete, Mr. Leonard Shiflett. On behalf of the Bahalas, Mr. John Quinn. On behalf of the City of Wake Forest, Mr. Victor Filippini. Before we start, you'll notice that we are missing a person. Justice Zinoff is our third panel member. She has taken ill, but because of technology, she will be able to review all of the orals as we prepare our dispositions. So, we are ready to proceed if you are. Mr. Shiflett. May it please the Court, my name is Leonard Shiflett and with me today is Michael Reinhart. We are the attorneys for Carrie Freedman, who is the plaintiff below in the appellant, before your honors. The underlying action was commenced when the Bahalas failed to comply with the City of Wake Forest requirement that they cease construction on their single-family residence in the City of Wake Forest after Ms. Freedman had filed an appeal of the decision granting a building permit. It was a very simple issue. The action was for injunctive relief and it called to the Court's attention that there had been an appeal. The State of Illinois has provided in a statute that upon the filing of an appeal, all action that relies on the underlying determination as being appealed must cease. The City of Wake Forest has incorporated that same statutory provision in its code. It's straightforward. No one has argued that the words of that statute require anything other than the Bahalas to stop their construction. The City of Wake Forest was put on notice by a letter and messenger delivery with the appeal and a direct question, are you going to take action to stop the Bahalas from constructing on their property? The letter was ignored. This action was filed. We appear in the Circuit Court for the 19th Judicial District in Lake County solely for injunctive relief. Ultimately, our case was dismissed with prejudice on motion under Rule 2619 for failure to exhaust administrative remedies. The Illinois legislature has provided in 65 ILCS 5-11-1315 that a property owner has a right to bring an action when there is a violation of a municipal ordinance. Well, let's stop right there. Lake Forest has been in an interesting position in this particular case, first as a plaintiff and now possibly as a defendant somehow. Didn't Lake Forest allow the action that the Halalas were taking? Didn't they approve the building permit? And wasn't there a variation, I guess, maybe from the statutory or ordinance authority? No, there wasn't. There was never a variation, a variance from the zoning ordinance. This was come in with their plans and specifications and it's reviewed and a building permit was issued. Well, then did they not need a variation? I mean, this went on. Their approval of their plans went on for a period of, well, at least three hearings, maybe four? Well, there were two different proceedings. There was a prior proceeding before the Building Review Board of the City of Lake Forest, which deals with the size of the house. As I understand it, I did not participate in that proceeding, but a lot of time was spent on the size, the height, the volume of the house. No building permit results from that action. After that action took place, then a separate action, in a sense, where the Halalas went in and asked for a building permit to be issued. And that's the action that is challenged in the appeal that went before the ZBA. Well, what is the ordinance violation? You're referring to 11.13.15 that talks about a violation. What's the violation? The violation is the failure to stop construction. But that's not an ordinance violation. Yes, it is. We point out in our brief that the City of Lake Forest has an ordinance that mirrors what appears at 11.13-12. It says, an appeal stays all proceeding in furtherance of the action appealed for. So under the City of Lake Forest zoning ordinance, once the appeal was filed before the ZBA, the Halalas should have ceased construction. And when they didn't cease construction, they were in violation of the City of Lake Forest ordinance. And the City of Lake Forest should have taken action to compel them to stop work on the house. All right, well, it said, I'm looking at that particular statute or ordinance, no, statutory authority, because I'm looking at the state statute. It says that an appropriate action can be started to prevent unlawful construction. We don't have unlawful construction, do we? Yes, we do. It's unlawful because they didn't stop. I mean, there's a stop work concept that as soon as the appeal was filed, they had to stop the work. And they didn't stop the work. That's what generated- Do you have any specific case law or common law authority that preventing unlawful construction equals failure to stop when another action, when an appeal is filed? I mean, is there a case that says that? No, there's no case that says that. All right, so how are we getting to that point? Because the City of Lake Forest, for example, if I started to build a garage and I didn't have a building permit- But here they did have the permit. The question is, you question the validity of it, so your analogy would be different. Well, no, I was going to make it slightly different, that to get the permit, I have to make an application. If I start without the permit, I'm in violation of the ordinance. Here, I have a permit, but if an appeal is taken, another section of the ordinance says you have to stop work. Therefore, if you don't stop the work, the construction is unlawful because it's in violation of the ordinance. It says you must stop. This was an effort to stop- Because if the house is built, the remedies then are very limited. That's why there is a stop work provision, both in the state law and in the City of Lake Forest ordinance. All right, then let's go back to the design process with the city and then the building permit. Did your client have an opportunity to participate in either one of those activities? They did participate in the design review process. Were those public hearings or just hearings where interested parties could attend but notice? Because I see the word hearing in the briefs quite a bit. As I said, I did not participate. There, I think, are opportunities for comments, but you do not have a presentation of any evidence. You're not permitted to bring your people there and say, well, this is wrong because. You can ask questions, you can make comments, but it's not an adjudicative process. And the board makes it, as I said, it's a volume size, how big is the box on the land kind of thing. And so, ultimately, the Zoning Board of Appeals approved something. What did they approve? The design plans? No, the board of review ultimately approved the size of the house. And that's what's under appeal? That was what had been appealed by your client? Yes, that was a separate proceeding. Then they went to get a building permit. The building permit has different requirements. Your electrical has to comply with the electrical code plumbing. That was never reviewed before. Where the building is going to be on the plot has to be approved, and that's one of the issues here. This house, City of Lake Forest, for a lot in depth, has a 50-foot setback. It's a 50-foot setback. They issued a permit to allow this house to be built with a 20-foot setback, which is in violation of the city ordinance. Are you saying that required a variation? That would require a variation, and none was ever requested. That's a separate proceeding that has to go before the city council, as I recall, in the City of Lake Forest. It doesn't go before the ZBA. Has that ever happened in this case to your house? It never happened. They never applied for a variance. And I don't believe they would have qualified for a variance because, as I understand it,  Variances are really for if you have an older house that was built 60, 70 years ago, and now you want to put an addition on, and the lot line, you may have to go over a few feet. They may allow it in that case. But for new construction, they don't allow a variance. This property is a, we'll call it an old town lot that somehow was subdivided after maybe a house was taken off or something of that nature? No, it was a large lot. But in the city area? Well, if I was in the original City of Lake Forest, but it's not downtown. It's to the west of downtown. These are all very large lots. But it was divided at some point? Yes, it was. And your client purchased early on? She was the first purchaser. And then the lot that the new house is going on sat vacant for some time? It's always been vacant until now. I'm talking about while your client was in possession. Yes. About how long? I think in the 80s, they both bought in the 80s, so it's been vacant for some 30 years. All right. But the issue then of the underlying violation is the building code is not being complied with because of the setback requirements, because of the size of the lot. The lot has a lot of square footage in it. But remember, this is a lot in depth. It has a very narrow neck that comes down off of Valencia Road to get to the main part of the lot. You don't count any of that square footage in determining how big is the lot for the building purposes. And it doesn't meet the minimum requirements of some 66,000 square feet of buildable area. So there's no question that it would not meet the ordinance as it sits, so it would need some sort of a variation. That was always understood. That's my understanding, that if they wanted to build on this, they had to apply for a variation. When your client built, did she have to have a variation? No, because her house was the original house on all the lots. So the prior owner cut off the back of the lot, of this big lot, to make what the lot was ultimately purchased. What's the status of the construction now? The house is, from the photos I have seen, at least on the exterior, appears to be substantially complete, if not totally. What remedy are you asking for? The underlying remedy is if we prevail, the house should not have been built. I don't believe it's a buildable lot. The house should be taken down. That's what you're asking for? That is one of the remedies that would be available to the court. Is it there? The court could probably order monetary compensation. This house sits on top of the Friedman property. When it should have been 50 feet back. If it had been 50 feet back, they couldn't have built it because it was in a regulatory floodplain. This is, I could ask who the construction was. This was a house that was surrounded by water in our most recent floods. Now, there are other houses that are surrounded by water, but this is designed to be surrounded by water. Because it's in a floodplain. And the only way they could build it was to move against what's provided in the city ordinance. Did the zoning board's activity continue after you filed suit? Yes, we had a hearing before the zoning board. They have rendered their decision. And that has been appealed. And that action has been stayed pending the outcome of this case. Okay. Which gets to the issue of the dismissal of this action with prejudice has created substantial problems in getting this whole body of issues resolved. And let's go there. Your complaint asked for more than just a preliminary and then ultimately, if you had gotten past there, a permanent injunction. You were looking at all sorts of other remedies, correct? Yes. And why is that not a problem? Because the purpose of your injunction, as you stated at your very beginning, was to cease construction. Because in order to show a basis for injunctive relief, we're also obligated to show that we have a high likelihood of prevailing. So we did have all these other problems with the property we put before the court. And as we pointed out in our brief, this is not, the decision in this case doesn't need administrative review. As I pointed out, the setback is set forth in the ordinance. You're either 20 feet or you're not. You're either 50 feet or you're not. The measuring, Mr. Filippini will take a different position, but I think that the measuring of the total footage is easily done. This is not something that requires administrative agency input. Secondly, we also- But it could require administrative agency input if a variance is requested, correct? Yes, if, but that has never been requested and that's a separate proceeding. To ask for a variance, you have to make an application and it goes before the, I believe it goes before the city council, not the ZBA. And it's essentially, it's an amendment to the zoning ordinance to give you the variation. And that's never been done. Well, it's never been done in this case, but I'm sure it has been done on lots of occasions. In fact, I think I sat on a case or two where it was done. Yes, I'm sure it is. So it's not an impossibility. No, it is a possibility. It's a possible remedy for the belongers. If you can wrap up now, if you would. The time has come and you'll have an opportunity to- Yes, I'll give my other comments. Thank you. Thank you. Now, who will proceed first? I, Judge. Mr. Filippini. I'll be back this evening before we start. We're splitting on a timing bill. Okay. May it please the court. Again, I'm Victor Filippini, appellant at nine on behalf of the appellee of the city of Lake Forest. Although I believe that the city's appellee brief addressed all the matters raised in the original brief by the appellant, there are several points in the reply brief that I thought I might mention. Actually, one of them was part of your conversation with Mr. Shifflett just a moment ago, and that is the nature of the 11-13-15 action. In the complaint and in the action below, and even up through the time of their appellant brief, the 11-13-15 violations were all of those items that were asserted in the complaint and in the petition with the ZBA for the ZBA appeal. Only on the reply brief did the issue suddenly become whether or not there was a violation because the Bilalas did not stop construction upon the filing of the appeal. Did they, in fact, stop construction when the appeal was filed? Well, as far as the city was concerned, we received this on a Friday. The ZBA appeal was filed on a Friday. On Monday, the next business day, the action, which is now before you, was filed with the circuit court. I would note that 11-13-12 does not provide for an automatic stay. There are at least two things that have to be decided. One, whether there's a proper appeal. An appeal is only proper if it's timely filed. If someone filed an appeal six years after the case, that doesn't stop activity just because they filed something. It still has to be a proper appeal, so there's a determination that needs to be made there. In this case, because the building review board and city council review of the initial construction, the initial plans of construction, had been completed far more than 44 days earlier or 45 days earlier, there was a genuine question as to the timeliness of that appeal. Secondly, there is specifically in the statute an opportunity for the zoning officer to determine whether or not the construction should be stayed in order to prevent peril to life or safety. So it's not an automatic stay. There are things that have to be assessed beforehand. In this case, the appellant didn't give the city any real opportunity to do so. Well, what was the appeal? What is the actual appeal that was taken? Is it from the building permit, or is it from the design process, or both, or what? The appeal was wide-ranging, if Your Honor has seen it. Well, it has to have some basis in the court case. The fundamental point of it was that the building permit was improper. And in that claim of impropriety was not that anything about the building permit application itself being improper. Rather, there were questions as to the existence of the lot. The plat, which was part of the record, showed the lot itself. It showed the lot, although appellants argued that the lot was only 61,000 square feet and it needed to be 66,000 square feet. The very plat for the property shows the property as being in excess of 80,000 square feet. The plat actually includes the setback line on the Ballala property. And so the setback had already been established in 1982 when the property was subdivided initially. Was it setback at 50 feet or less than 50 feet? It was setback at 50 feet. The issue, in part, that the plaintiff, the appellant, has presented is that the appellant wants to measure the 50 feet from a different point than the city council determined it should be measured at the time the city council approved the subdivision in 1982. So what the appeal was, was not a decision challenging a building permit issued in 2012, I'm sorry, 2011. Rather, it was really a challenge to a subdivision determination of the city council of 1982. And there were a series of other claims raised in the context. Were there any substantial changes in the property between 1982 and when this began? Not a one. The property has been vacant and undeveloped throughout. I didn't ask you that. My question is, is there anything that changed in that property with respect to floodplain? I don't know whether there have been any adjustments in the FEMA maps, but the floodplain issues were all addressed as part of the building permit process. And while those were items raised in the context of the ZBA appeal on the building permit, those also were matters that, since they were before the ZBA appeal, should not have been brought contemporaneously before the circuit court. The whole essence of this case is that they rolled the dice not once but twice and hoped that they got Yahtzee one of these times. And, frankly, that's not the way it's structured. You follow the process that is established. There is an administrative review process. There was an argument made in the reply brief that the ZBA is not conducting an action when it holds one of these appeals. Well, I would note, and we cited the overnight transport case. That was tried to be distinguished because, well, the NLRB is appointed by the President and confirmed by the Congress. Well, it may not be quite as grand, but the mayor is the one who appoints the ZBA members, and those members are confirmed by a legislative body. I would also note that, although they claim that the ZBA doesn't have the power to compel witnesses, Section 1113.3 of the Illinois Municipal Code, subsection E, specifically says that the ZBA does have the authority to compel the attendance of witnesses. Do they invite witnesses? Well, do they invite them? Do they offer the opportunity for someone who may have an objection to also present witnesses? Absolutely, Your Honor. The proceeding before the ZBA was taken under oath on a record, and it was ultimately deliberated upon and the ZBA issued a written opinion. But this is the appeal process. Correct. And that's the one that they were challenging isn't an action, and therefore that's why they went to the circuit court. Okay. But the earlier action that they're appealing to the ZBA was the building permit issuance? For the design? No, if I may, and I don't mean to be boring about the City of Lake Forest procedures, which some people say are over procedure. The city has a building review board looking at the building design and size. That process is conducted by a building review board, and their decision is subject to an in-house appeal to the city council. It is not subject to administrative review. It is not a statutorily recognized adjudicative process that the courts then review. So if it were ever appealed, it would be appealed de novo to the courts. In this case, not only did the appellant appear and get involved in that whole building review board process, but she filed an appeal with the city council, and the city council rejected that appeal. And that appeal was more than 45 days before she filed the ZBA appeal. So if, in fact, the ZBA appeal was regarding that issue, the determination of the building review board of the size of the house, then it was clearly untimely. If I would know one other point, Your Honor. I have a question for you. Yes. Ultimately, the complaint was dismissed in the trial court on 2619 that there was a failure to exhaust administrative remedies. What other remedies could plaintiff have employed at the time that she filed her complaint? I'm kind of hearing you saying on one hand there's administrative remedies, but on the other hand you're saying it wasn't timely, she really didn't have any further administrative remedies. No, Judge. I think that she had all the administrative remedies at her disposal before the zoning board of appeals. When she filed the ZBA appeal, that could have resulted in a stay. That could have given her all relief that she sought if she were successful before the ZBA. I would note, however, that the city, once this action was filed in the circuit court, it was not going to cross swords with the circuit court as to whether or not a stay should be issued after the circuit court already determined that one should not be. If I might add one point before I yield to Mr. Quinn. The ZBA appeal is concluded. The stay that Mr. Shifflett now claims his client is appealing on is now moot. Since mootness can arise at any time, if in fact this appeal is based on the stay, which it never had been up until the reply brief, then it's moot, and there's no point that we should be contending at this point. Thank you, Judge. Mr. Quinn. Good morning, Your Honors. I'd just like to go back and touch on a point about that this is really a procedural matter at this point, and it's not that the plaintiff didn't have remedies open to her. It's just that there's a procedural order in which these remedies need to take place. So first she needed to exhaust the Zoning Board of Appeals, and then after that was exhausted, then she has the option to seek administrative review in the trial courts. What if her complaint for injunction only asked for construction to cease and did not have the other allegations that were covered by the Zoning Board of Appeals? Well, I think that's... What would your client's position have been? Well, I think the position would have been that the city administrator didn't make a ruling that the construction had to cease. The construction project, they had allowed this construction to go on for 44 days before they filed this, and construction can't necessarily stop on a dime. It didn't stop on a dime. They had to finish a particular aspect of the property, and then construction did cease after that until it was determined that it could go forward, I believe, by the trial court. I think that's... The issue of the stay on the construction is all a red herring at this point because it's moved. The ZBA, they did appeal before the ZBA. The ZBA didn't agree with them on that issue. The trial court didn't agree with them on that construction should cease, so there's nothing, there's no impetus at this point for construction to cease. Well, did the trial court ever take evidence, or was it strictly legal argument on administrative remedies? Well, we didn't get, I mean, it was settled on a motion to dismiss, so this hadn't got to an evidentiary stage of the lawsuit, but there's precedent for deciding these matters on that very procedure. If you look at the Dixon case, what happened in the Dixon case is a group wanted to put up a parking lot. Another group objected. The objectors said that it violated the ordinance. It went before, they did not appeal it to the ZBA. They brought it into the trial court. The trial court said, we're not giving you an injunction because this doesn't violate the ordinance. Then it went up to the appellate court. The appellate court said, we find that it does violate the ordinance, but because you didn't exhaust the administrative remedies by appealing it before the ZBA, we're declining to grant you the injunction also. So they decided the case precisely on procedural grounds. If your honors were to decide it the same way, you could essentially make a finding that there was a violation of the ordinance, but in the same way as in the Dixon case, that the fact that they didn't follow the proper procedure and exhaust remedies as required by the Dixon case, which the 19th Circuit Court judge was bound by, that no injunction should be granted. At the administrative level, the city level, did your client ever object to the untimeliness of this appeal to the city council or the appeal to the Zoning Board of Appeals? Your honors, I don't know. I don't know the answer to that. Okay. I'd also like to point out that there was some discussion that this body is not, that the ZBA appeal process would not be a judicial action for purposes of dismissing the lawsuit under 2619A3, which says you can't have multiplicity of litigation. And I would just point out that they've argued in their briefs and touched on it a bit here, that this wouldn't be considered a judicial process and that the ZBA is incapable of delivering a final order. But we can see that that's not the case, both in the Dixon case where they said, yes, you have to exhaust administrative remedies. That's indicative of the fact that they would be able to create a final order that would be then reviewable by the trial court under the, as an administrative review. And also the case that they cited themselves, which is the Bull case, the court states specifically that the decision of the zoning board was reviewable under the administrative act, but the defendants did not appeal the zoning board's affirmance of the administrator's first decision. The decision of the board, therefore, became final and was binding on the defendants and is not subject to collateral attack. And this was a first district case, so clearly there's precedent that these zoning board decisions and the appellate process they're from are, in fact, final decisions that, if they're going to be challenged, they need to be challenged in the administrative review process. I will also just mention that as far as the variance goes, the city granted them the building permit. It was the city who was required to determine what was necessary. They granted them the building permit. They allowed them to build. The city has never said anything that they've done is improper. And to the extent that they disagree with the city, they need to bring that challenge through proper legal channels. They needed to bring it before the ZBA. The actual factual issue of whether or not a variance was required or where the house was situated and all that, those issues are not really before the court because the matter was dismissed before any of those issues could come up on these procedural grounds. And our position is that the trial court properly dismiss it because there were procedural improprieties with the way they brought this action. Was your firm involved in the initial proceedings with the city on the design review and things of that nature? I do know that my firm was involved with some of the hearings that took place with the city. I don't have a perfect understanding of exactly what the procedures of the city part of the case are, and so I can't really speak to exactly what parts we were present in. But I do know that my firm, not me personally, was present for some of the hearings that were held. And they were hearings that involved testimony, and they were testimonial hearings. Okay. All right, thank you, Mr. Quigley. Thank you, Your Honors. Mr. Shifflett. I'd like to address a couple of points that were raised. First, there was never an attack on the timeliness of the appeal. The appeal runs 45 days from the issuance of the building permit. What happened before the building review board didn't affect any timeline on that. It was triggered by the issuance of the building permit, and it was timely filed as conceded, and the brief filed by the city of Lake Forest. All right, but what you do in your complaint for injunction, and we've already discussed this, but I just want to cover it again, you raise many of the issues that came up in the building design process, correct? Yes, yes. And why didn't you bring a separate action if those were not subject to administrative review so there might not be any confusion about what was and what wasn't? The main reason is because of timeliness. By the time we were retained in the running of the clock to get this on file, I didn't have a chance to study all of the issues. When we went before the ZBA, we withdrew our challenge to the bulk restrictions, which is what the board of review did. We did not present any evidence challenging that. So the main issues on the underlying case is the setback, the lot size, the encroachment on the floodplains and the regulatory floodways. That's where the evidence was put forward before the ZBA, and those are the principal issues. When you talk about bulk, I mean, I'm sure your client didn't want a 12-foot house next door, but that wasn't your concern at that point? No, I mean before the ZBA, it's the setback, it's that the house, the lot is not a buildable lot, which gets us back to what happened in 1980. There's never been any evidence of what happened in 1980. All we had was a plant was approved that had a line on it that said 20 feet, and I'm getting into the merits, but there's case law. We didn't cite it in the brief because it wasn't relevant. There's a case law that says you can't do that. Well, Mr. Filippini said it said 50 feet. I believe he misspoke. The setback that's on the plot is a 20-foot setback, and that's what they're relying on. But you can't do that. You have to get a variance to do that, even if you file a plan. When it came before the city, whichever board it happened to come before, when it came before the city, it was a request for a subdivision, and a subdivision, at least in my subdivision of that lot, and it can be just two lots. It doesn't have to be 10 or 12 or 20. It can be two. A subdivision, in my understanding of the rule, is that it contains those building restrictions that would go with the subdivision. Yes, you can make them more restrictive than applied by the zoning code, but you can't make them less restrictive. So if you want a 100-foot setback, you can do that, but you can't do a 20-foot setback when the ordinance requires a 50-foot setback. Then shouldn't somebody have challenged that in 1982? Someone could have challenged that in 1982, but the case law, in effect, is that that's a nullity. Unless they hit a variance, you can write anything you want on the plan of subdivision. That doesn't make it law. Well, as long as it's not approved by the village, doesn't village approval presume validity? It allowed the two lots to exist. Well, it allowed the subdivision to exist. Yes, having the two lots, but it doesn't necessarily, and we're getting into the merits of the case, and I'm sorry I don't have the case law in front of me, but one particular case that comes to mind, they did exactly that. They had a larger subdivision, typical subdivision for residential units, except they created two business units on the side, and it was recorded, it was accepted, and the appellate court said, no, you can't do that. If you want those as business units, lot, be something, you had to file for a variance. You can't just approve a zoning ordinance, I'm sorry, approve a plan of subdivision, and that's what happened here, that just approving it doesn't give you the variance you're seeking, as we're getting into the merits. What should have been done in this case, if the court felt that there needed to be exhaustion administrative remedies, the case should not have been dismissed, and it should be reversed for that reason with directions. This could have been stayed. It has created an endless nightmare of what is the effect of a dismissal with prejudice when there's not been a decision on the merits, and we've had to face this, and we may have to face it again in our other case. I have, again, we've talked about this before, but now we're at that point. There have to be reasonable resolutions of these issues if it goes on. How would tearing down that building be a reasonable resolution of this process? That is one resolution. A just resolution of this process. Another resolution is to award to the impacted properties, including the Freedmen's, a monetary damage, or they've lost their property. Which would take it out of injunctive relief and was one of the issues I think discussed earlier as well. Right. The remedy now might be different than tearing it down. I appreciate this is a large house. Money has been put into it. But Judge Hoffman warned the Balawas. He said, well, you're on notice now as to what remedy the Freedmen's are looking for. And they proceeded in the face of knowing what was going to happen. When we started this case, there was concrete poured for various foundation parts. But there wasn't a house there. And there wasn't even half the concrete poured. In a way, when we prevail in this case, they brought it on themselves by continuing to do the work. When it could have been resolved by having a stay of the work, we had the appeal before the ZBA. We took an appeal of that decision. And we could have been done with the whole case by now. If this case had only been stayed until the ZBA finished its work, and then we could have moved forward with that appeal. Thank you very much. Thank you. Appreciate it. Thank you, gentlemen, for your arguments. The case will be taken under advisement. We will issue a decision in due course. And we are going to stand in recess to prepare for our next case. Thank you.